1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THOMAS W.S. RICHEY,

               Plaintiff,

     v.

D. DAHNE,

            Defendant.

CASE NO. C12-5060BHS

ORDER ADOPTING IN PART
AND MODIFYING IN PART
REPORT AND
RECOMMENDATION,
GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT, AND
DENYING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

This matter comes before Court on the Report and Recommendation ("R&R") of the Honorable Karen L. Strombom, United States Magistrate Judge (Dkt. 59), Plaintiff Thomas W.S. Richey's ("Richey") objections (Dkt. 62), and Defendant Dennis Dahne's ("Dahne") objections (Dkt. 63). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

## I. PROCEDURAL AND FACTUAL BACKGROUOND

Originally, both parties asserted that the facts were undisputed.  Dkt. 46 at 1–2; Dkt. 52 at 1.  Now, however, it appears that some material facts are disputed.

Richey, an inmate, submitted a prison grievance that identified a prison officer as "an extremely obese Hispanic female guard . . . ." Dkt. 47, Declaration of Thomas WS Richey ("Richey Dec."), Exh. A. An officer, who is not a party to this proceeding, declined to accept the grievance and, instead, returned the grievance to Richey with an instruction to rewrite it appropriately and resubmit it within five days. *Id.* Richey rewrote portions of the grievance, repeated the language quoted above, and resubmitted the grievance. *Id.*, Exh. B. The R&R states that an unidentified officer refused to accept the grievance and, instead, ordered Richey to rewrite the grievance stating that "Hispanic female is adiquit [sic]. Extremely obese is un-necessary [sic] and inappropriate." Dkt. 59 at 4. The record, however, reflects that Dahne ordered Richey to rewrite the grievance. Dahne declares as follows:

> I directed Offender Richey to comply with the previous rewrite instruction he had gotten because the grievance contained so much irrelevant, inappropriate, and borderline threatening extra language. I told him to: "Rewrite as directed. Hispanic female is adequate [sic]. Extremely obese is un-necessary [sic] and inappropriate." I did not have room to include every single part of the grievance that was not in accordance with the OGP guidelines, but I believed a reasonable person could understand that making repeated references to a staff member's weight and talking about guards getting strangled have nothing to do with an actual grievable issue and are inappropriate.

Dkt. 52-2 at 3–4. Dahne did not date this rewrite order. Dkt. 70, Exh. 2.

On December 7, 2016, Richey submitted an offender's kite to Dahne asking if Dahne, as the grievance coordinator, was going to process his grievance. *Id.*, Exh. 3. Dahne responded as follows: "No, due to your decision not to rewrite as requested, your grievance has been administratively withdrawn." *Id.* The Court was originally under the

1    impression that there was a rule that failure to rewrite a grievance automatically resulted

2    in an administrative withdrawal of the grievance.  After further review of the record,

3    however, it does not appear that this is a mandatory rule.  Instead, it appears that the

4    grievance coordinator may also grant an extension of the timeframe to rewrite the

5    grievance or automatically appeal an initial grievance to the next level.  Dkt. 52-2 at 38–

6    40.  Regardless, Richey asserts that Dahne failed to date the document ordering Richey to

7    rewrite his grievance and, therefore, questions of fact exist whether five days passed

8    before Dahne considered the grievance administratively withdrawn.  Dkt. 70 at 4 (citing

9    *id*., Exh. 2).

10          Furthermore, Richey has submitted evidence that Dahne accepted a rewritten

11   grievance dated December 8, 2016 with the same identification number as the original

12   grievance.  *Id*., Exh. 4.  On this grievance Dahne wrote that it "will be forwarded to HQ

13   as appeal of coordinators request for rewrite."  *Id*.  Richey contends that, if his response

14   was procedurally untimely and withdrawn, the grievance could not have been forwarded

15   as an appeal.  Dkt. 70 at 5.  This evidence appears to contradict Dahne's claim that he

16   administratively withdrew Richey's initial grievance.

17           These facts allegedly implicate two provisions of the Washington Department of

18   Corrections' ("DOC") Offender Grievance Program ("OGP").  First, if the inmate's

19   "complaint contains profane language, except when used as a direct quote," the grievance

20   form is returned "unprocessed with a notation to rewrite it."  Dkt. 52-2 at 33.  Second, the

21   Grievance Program Manager and Dahne declare that if an inmate "does not follow the

22   rewrite instruction within the required timeframe" – within five days of receipt of those

1  instructions – "the matter is considered administratively withdrawn, which is the

2  procedural determination made when OGP deadlines are missed without reason for the

3  delay."  Dkt. 52-1 at 5; Dkt. 52-2 at 4.

4        On December 6, 2012, the Court granted Dahne's motion to dismiss Richey's

5  claim for failure to state a claim.  Dkt. 21.  In reversing this Court's order granting

6  Dahne's motion to dismiss, the Ninth Circuit concluded that Richey had stated a plausible

7  claim for violation of his First Amendment right to grieve and retaliation for exercising

8  that right and, regarding the defense of qualified immunity, provided as follows:

9         Dahne seeks qualified immunity because his "actions and decisions were
          based on his application of Department policy and his attempt to have
10        Richey comply with the grievance program's requirements so that Richey's
          complaint could be addressed." At the motion to dismiss stage, however, "it
11        is the defendant's conduct as alleged in the complaint that is scrutinized for
          'objective legal reasonableness,'" *Behrens v. Pelletier*, 516 U.S. 299, 309
12        (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)) (emphasis
          in original), and Richey's complaint says nothing about whether the prison
13        had any language policy, what that policy was, and how consistently that
          policy was enforced. Dahne is therefore not entitled to qualified immunity
14        at this time.

15  *Richey v. Dahne*, 624 F. App'x 525, 526 (9th Cir. 2015).

16        On June 27, 2016, Judge Strombom issued the R&R recommending that the Court

17  deny Richey's motion for summary judgment and grant Dahne's motion for summary

18  judgment because Dahne is entitled to qualified immunity.  Dkt. 59.  Judge Strombom

19  concluded (1) that material questions of fact exist on Richey's First Amendment claim,

20  Dkt. 59 at 14, (2) that material questions of fact exist on Richey's retaliation claim, *Id*. at

21  16, and (3) Dahne is entitled to qualified immunity because Richey's constitutional rights

22  were not clearly established, *Id*. at 19.

1    On July 7, 2016, Richey filed objections arguing that his rights were clearly

2    established at the time of the alleged violation.  Dkt. 62.  On July 18, 2016, Dahne

3    responded.  Dkt. 64.  On July 22, 2016, Richey replied.  Dkt. 66.

4        On July 11, 2016, Dahne filed objections arguing that there are no disputed issues

5    of material fact and that Dahne is entitled to summary judgment that he did not violate

6    any of Richey's constitutional rights.  Dkt. 63.  On July 18, 2016, Richey responded.

7    Dkt. 65.

8        On September 14, 2016, the Court issued an order adopting in part and modifying

9    in part the R&R, granting Dahne's motion for summary judgment, and denying Richey's

10   motion for summary judgment.  Dkt. 68.  In relevant part, the Court found that, out of the

11   three interactions between Richey and corrections officers regarding his grievances,

12   Dahne personally participated in only one of those interactions.  Dkt. 68 at 2.  The Clerk

13   then entered judgment in favor of Dahne against Richey.  Dkt. 69.

14       On September 19, 2016, Richey filed a motion for relief from judgment arguing

15   that Dahne personally participated in two of the three interactions.  Dkt. 70.  On

16   December 15, 2016, the Court granted Richey's motion and vacated its previous order

17   and the judgment.  Dkt. 73.

18                         **II. DISCUSSION**

19   **A.    Standard of Review**

20       The district judge must determine *de novo* any part of the magistrate judge's

21   disposition that has been properly objected to.  The district judge may accept, reject, or

22

1  modify the recommended disposition; receive further evidence; or return the matter to the

2  magistrate judge with instructions.  Fed. R. Civ. P. 72(b)(3).

3     In this case, the parties have properly objected to the three main conclusions set

4  forth in the R&R.  Thus, the Court will conduct a *de novo* review of the motions.

5  **B.     Summary Judgment Standard**

6     Summary judgment is proper only if the pleadings, the discovery and disclosure

7  materials on file, and any affidavits show that there is no genuine issue as to any material

8  fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

9      In this case, the Court agrees with Dahne that the material facts are undisputed

10  and the matter turns on questions of law.  Thus, the Court declines to adopt the R&R to

11  the extent that it concludes that material questions of fact exist.

12  **C.     42 U.S.C. § 1983**

13     Section 1983 is a procedural device for enforcing constitutional provisions and

14  federal statutes; the section does not create or afford substantive rights.  *Crumpton v.*

15  *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  In order to state a claim under section 1983,

16  a plaintiff must demonstrate that (l) the conduct complained of was committed by a

17  person acting under color of state law and that (2) the conduct deprived a person of a

18  right, privilege, or immunity secured by the Constitution or by the laws of the United

19  States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by*

20  *Daniels v. Williams*, 474 U.S. 327 (1986).

21     Qualified immunity shields government officials from civil liability unless a

22  plaintiff demonstrates: "(1) that the official violated a statutory or constitutional right,

ORDER - 6

1  and (2) that the right was 'clearly established' at the time of the challenged conduct."

2  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).  The Court has discretion to decide

3  "which of the two prongs of the qualified immunity analysis should be addressed first in

4  light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S.

5  223, 236 (2009).

6  **1.     Constitutional Violations**

7  Richey asserts two constitutional claims.  First, Richey asserts that his

8  constitutional right of access to the courts was infringed.  The Ninth Circuit has held "that

9  prison officials may not punish an inmate merely for using 'hostile, sexual, abusive or

10  threatening' language in a written grievance."  *Bradley v. Hall*, 64 F.3d 1276, 1282 (9th

11  Cir. 1995).  It has also "held that disrespectful language in a prisoner's grievance is itself

12  protected activity under the First Amendment."  *Richey v. Dahne*, 624 Fed. Appx. 525

13  (9th Cir. 2015) (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009)).  In other

14  words, "applying the *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64

15  (1987), factors for assessing the constitutionality of a prison regulation, a prison may not

16  take or threaten adverse action against an inmate for using disrespectful language in a

17  grievance."  *Richey*, 624 Fed. Appx. at 525 (citing *Brodheim*, 584 F.3d at 1272–73).

18  In this case, Richey has met his burden to show a violation of his constitutional

19  right.  Dahne took the adverse action of ordering Richey to rewrite his grievance because

20  of inappropriate language in the grievance.  *Richey*, 624 Fed. Appx. at 525 (citing

21  *Brodheim*, 584 F.3d at 1272–73).  Despite Dahne's numerous arguments to the contrary,

22  it does not get much clearer than the Ninth Circuit reiterating the law in an earlier order

1    in the same case.  Moreover, the Court adopts the R&R's rejection of each of Dahne's

2    arguments on this issue.  Dkt. 72 at 14.  The Court, however, rejects the ultimate

3    conclusion that Dahne has failed to establish an absence of material questions of fact.

4    Instead, the issue is one of law, and the Court concludes that Richey has shown a

5    violation of his constitutional right to freedom of speech.  *Bradley*, 64 F.3d at 1281.

6    Therefore, the Court grants Richey's motion and denies Dahne's motion on Richey's

7    First Amendment freedom of speech claim.

8         Second, Richey asserts that Dahne retaliated against Richey because Richey

9    exercised his first amendment rights.  "Retaliation against prisoners for their exercise of

10   [their First Amendment] right is itself a constitutional violation, and prohibited as a

11   matter of 'clearly established law.'"  *Brodheim*, 584 F.3d at 1269.  There are five

12   elements to a retaliation claim:

13             (1) An assertion that a state actor took some adverse action against an
              inmate (2) because of (3) that prisoner's protected conduct, and that such
14            action (4) chilled the inmate's exercise of his First Amendment rights, and
              (5) the action did not reasonably advance a legitimate correctional goal.

15   *Id*. (quoting *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005)).

16

17        In this case, Richey has met his burden on each element of his claim.  Dahne took

18   the adverse action of administratively withdrawing Richey's grievance.  Although Dahne

19   argues that ordering an inmate to rewrite a grievance is not an adverse action, the R&R

20   sufficiently rejects this argument.  Dkt. 59 at 15.  "Outside the prison context, we have

21   never held that a plaintiff must establish an explicit threat to prevail on a retaliation

22   claim. . . . We see no reason why a different standard should apply in this setting."

1    *Brodheim*, 584 F.3d at 1270.  Richey has submitted sufficient evidence to create

2    questions of fact whether failing to accept a grievance and being precluded from

3    accessing the court would follow his failure to comply with Dahne's orders.  Thus, no

4    matter how egregious the underlying conduct alleged in the grievance, an inmate would

5    have no recourse if he allegedly, and in complete discretion of the grievance coordinator,

6    insulted a guard in the written grievance.

7           As for causation, Richey has shown that questions of fact also exist on this issue.

8    In the offender's kite, Dahne wrote that, due to Richey's decision not to rewrite as Dahne

9    had ordered Richey to do, Dahne had administratively withdrawn the grievance.  Dkt. 70

10   at 13.  While Dahne asserts that he was following the procedural requirement of

11   administrative withdrawal, Richey has submitted sufficient evidence to show that

12   material questions of fact exist for trial.  For example, Dahne's request to rewrite is not

13   dated, making it unclear when the five-day response deadline began and ended.  Richey

14   also claims that he did submit a "rewrite" wherein he refused to rewrite his grievance.  In

15   light of this evidence, the Court concludes that material questions of fact preclude

16   summary judgment.

17          Regarding the chilling of an inmate's free speech, Dahne's arguments are without

18   merit.  In the Ninth Circuit, "a prisoner's fundamental right of access to the courts hinges

19   on his ability to access the prison grievance system."  *Bradley*, 64 F.3d at 1279.  The

20   Ninth Circuit has "held that an objective standard governs the chilling inquiry; a plaintiff

21   does not have to show that 'his speech was actually inhibited or suppressed,' but rather

22   that the adverse action at issue 'would chill or silence a person of ordinary firmness from

1  future First Amendment activities.'"  *Brodheim*, 584 F.3d at 1271.  A reasonable juror

2  could conclude that repeatedly refusing to accept a grievance because it contains

3  inappropriate language would chill a person of ordinary firmness from submitting

4  additional grievances.

5          Regarding the final element, Richey "must show that the challenged action 'did

6  not reasonably advance a legitimate correctional goal.'"  *Brodheim*, 584 F.3d at 1271

7  (quoting *Rhodes*, 408 F.3d at 568).  Richey has easily met this burden because Dahne has

8  failed to advance a legitimate goal.  Dahne argues as follows:

> [P]rison officials have a legitimate penological interest in requiring Richey,
> and all inmates, to comply with the procedural requirements of the
> grievance program. Prisons have a legitimate penological interest in
> requiring that inmate grievances contain only a straightforward statement of
> concern about the one issue the inmate is grieving and comply with
> deadlines. If prisoners are able to flout the OGP's procedural rules and still
> demand that the prison process their grievances, then the ability of prisons
> to resolve disputes, maintain order and respect, and enforce prison rules is
> threatened.

14  Dkt. 52 at 21.  Contrary to Dahne's argument, the Ninth Circuit has held that "a prison

15  may not take or threaten adverse action against an inmate for using disrespectful

16  language in a grievance."  *Richey*, 624 Fed. Appx. at 525 (citing *Brodheim*, 584 F.3d at

17  1272–73).  Although Dahne also relies on the timing deadlines, questions of fact exist

18  whether Dahne actually enforced the deadlines or withdrew the grievance in retaliation

19  for Richey's failure to rewrite the grievance as ordered.  Therefore, the Court denies both

20  motions for summary judgment on this aspect of Richey's retaliation claim because

21  material questions of fact exist for trial.

22

1        **2.      Clearly Established Law**

2        Government officials may be immune from constitutional violations if the law was

3  not clearly established at the time of the incident.  *Ashcroft*, 131 S. Ct. at 2080.

4        In this case, the R&R concludes that Dahne is entitled to qualified immunity.

5  Specifically, the R&R concludes that

6        [w]hile at the time of the challenged conduct in this case the Ninth Circuit had
           established that inclusion of disrespectful language in a grievance 'is itself

7           protected activity,' it cannot be said that instructing an inmate to rewrite a
           grievance because of the inclusion thereof, necessarily amounted to a violation of

8           an inmate's First Amendment right to redress grievances.

9   Dkt. 59 at 19.  Contrary to this conclusion, the Court has concluded that failure to accept

10  a grievance because of inappropriate or disrespectful language is a question of law and

11  not a question of fact.  As such, the law is clearly established on this issue because the

12  Ninth Circuit has held that "a prison may not take or threaten adverse action against an

13  inmate for using disrespectful language in a grievance."  *Richey*, 624 Fed. Appx. at 525

14  (citing *Brodheim*, 584 F.3d at 1272–73).  Dahne took the action of ordering a rewrite and

15  administratively withdrawing the grievance.  The question becomes whether Dahne

16  would objectively know that his actions were "adverse" actions.  *Anderson v. Creighton*,

17  483 U.S. 635, 639 (1987) (liability "turns on the 'objective legal reasonableness' of the

18  action.").  The Court concludes that a reasonable officer would know that either rejecting

19  or withdrawing a grievance because it included offensive language was a constitutional

20  violation.

21        In fact, the language from the Ninth Circuit cases leaves almost no doubt on this

22  issue.  For example, "a prisoner's fundamental right of access to the courts hinges on his

1    ability to access the prison grievance system." *Bradley*, 64 F.3d at 1279.  We hold that

2    "prison officials may not punish an inmate merely for using 'hostile, sexual, abusive or

3    threatening' language in a written grievance."  *Id*. at 1282.  Similarly, "[i]t is **well-**

4    **established** that, among the rights they retain, prisoners have a First Amendment right to

5    file prison grievances." *Brodheim*, 584 F.3d at 1269 (emphasis added).  Under these

6    principles, the Court concludes that the contours of Richey's rights to file a grievance

7    were "'sufficiently clear' that every 'reasonable official would [have understood] that

8    what he is doing violates that right.'" *Ashcroft*, 563 U.S. at 741 (citing Anderson, 483

9    U.S. at 640).  Therefore, the Court rejects Dahne's request for qualified immunity on the

10   basis that the law was not clearly established.

11       Dahne, however, also argues that his "actions and decisions were based on his

12   application of Department policy and his attempt to have Richey comply with the

13   grievance program's requirements so that Richey's complaint could be addressed."  Dkt.

14   52 at 23.  "The doctrine of qualified immunity shields public officials performing

15   discretionary functions from personal liability under certain circumstances." *Grossman*

16   *v. City of Portland*, 33 F.3d 1200, 1208 (9th Cir. 1994).  "[W]hether an official protected

17   by qualified immunity may be held personally liable for an allegedly unlawful official

18   action generally turns on the 'objective legal reasonableness' of the action, assessed in

19   light of the legal rules that were 'clearly established' at the time it was taken." *Anderson*

20   *v. Creighton*, 483 U.S. 635, 639 (1987) (citations omitted) (quoting *Harlow v. Fitzgerald*,

21   457 U.S. 800, 818–19 (1982)).  "Unlike in many [qualified immunity] cases, here the

22   allegedly unconstitutional action undertaken by the individual defendant consists solely

1   of the enforcement of an ordinance which was duly enacted by the city council."

2   *Grossman*, 33 F.3d at 1209.  "Courts have accordingly held that the existence of a statute

3   or ordinance authorizing particular conduct is a factor which militates in favor of the

4   conclusion that a reasonable official would find that conduct constitutional."  *Id*.

5            As with most legal matters, there are no absolutes here. On the one
         hand, an officer who acts in reliance on a duly-enacted statute or ordinance
6          is ordinarily entitled to qualified immunity. On the other, as historical
         events such as the Holocaust and the My Lai massacre demonstrate,
7          individuals cannot always be held immune for the results of their official
         conduct simply because they were enforcing policies or orders promulgated
8          by those with superior authority. Where a statute authorizes official conduct
         which is patently violative of fundamental constitutional principles, an
9          officer who enforces that statute is not entitled to qualified immunity.
         Similarly, an officer who unlawfully enforces an ordinance in a particularly
10        egregious manner, or in a manner which a reasonable officer would
         recognize exceeds the bounds of the ordinance, will not be entitled to
11        immunity even if there is no clear case law declaring the ordinance or the
         officer's particular conduct unconstitutional.
12

13   *Id*. at 1209–10.

14            In this case, Dahne asserts this doctrine with respect to Richey's retaliation claim.

15   For example, Dahne argues that "[c]onsistent with Department policy, Dahne

16   administratively closed the grievance because Richey refused to comply with a rewrite

17   instruction within the required time period."  Dkt. 52 at 23.  Richey, however, has

18   submitted sufficient evidence to create material questions of fact on this action.  The lack

19   of a date on the rewrite order and the December 8, 2011 grievance under the same

20   identification number undermine Dahne's assertion that he administratively withdrew

21   Richey's grievance because of a lapsed deadline.  Accordingly, the Court denies Dahne's

22   request for immunity on this issue because material questions of fact exist.

1

**III. ORDER**

2        Therefore, it is hereby **ORDERED** that the Court adopts in part and modifies in

3   part the R&R (Dkt. 59), Richey's motion for partial summary judgment (Dkt. 46) is

4   **GRANTED in part** and **DENIED in part**, and Dahne's cross-motion for summary

5   judgment (Dkt. 52) is **DENIED**.  The parties shall meet and confer and submit a joint

6   status report regarding pretrial and trial deadlines.

7        Dated this 15th day of December, 2016.

8

9        _____

10       BENJAMIN H. SETTLE
         United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22